UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

|  |  |
|---|---|
| CONNIE P.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 22-cv-02751-RMI<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 19 |

## INTRODUCTION

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability employment benefits under Title II of the Social Security Act. *See* Admin. Rec. ("AR") at 21-39.[2] In February of 2019, Plaintiff filed an application for Title II benefits alleging an onset date of July 1, 2014. *Id.* at 281-87. The claim was denied initially and upon reconsideration. *Id.* at 168-71, 173-78. Following three administrative hearings—on May 6, 2020; September 2, 2021; and, December 3, 2021—an ALJ entered an unfavorable decision on January 20, 2022, finding Plaintiff not disabled. *Id.* at 21-39; 45-134. In April of 2022, the Appeals Council denied Plaintiff's request for review. *Id.* at 1-3.[3] The following month, in May of 2022, Plaintiff sought review in this court (*see* Compl. (dkt. 1) at 1-2) and the instant case was initiated. Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 8 & 10), and

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in twenty-five (25) attachments to Docket Entry #12. *See* (dkts. 12-1 through 12-25).

[3] In light of the Appeals Council's denial, the ALJ's decision is the "final decision" of the Commissioner of Social Security—which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

both Parties have moved for summary judgment (dkts. 15 & 19). For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NRLB*, 205 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## BACKGROUND AND SUMMARY OF THE CLAIMS

Plaintiff raises four claims before this court. *See* Pl.'s Mot. (dkt. 15). The following is a summary of each claim and its relevant background.

Plaintiff's first claim asserts that the hearing conducted before the ALJ was unfair, as the ALJ prevented Plaintiff from being represented. *See id.* at 13-15. The ALJ in the present case held three separate hearings. AR at 45-134. On May 6, 2020, the ALJ conducted an initial hearing. *Id.* at 45-50. At this hearing, the ALJ confirmed—on the record—that Plaintiff was both aware of and understood her right to representation. *Id.* at 48. In addition to confirming that Plaintiff had received a hearing acknowledgment letter which set forth the right to representation, the ALJ also

orally gave Plaintiff the required explanations with respect to how a representative can assist in the proceedings, the limitation on attorney's fees, and the possibility of obtaining free legal representation through a legal services organization. *Id.* at 49. Following these explanations, and Plaintiff's confirmation of her understanding, Plaintiff indicated that she would like the opportunity to find a representative. *Id.* at 49-50. As such, the ALJ postponed the hearing until a later date to allow for Plaintiff to assess her options with respect to representation. *Id.* at 50.

On September 2, 2021, the ALJ conducted a subsequent hearing. *Id.* at 54-96. At the beginning of this hearing, Plaintiff indicated that her wife, Jennifer Pardini ("Ms. Pardini"), would be representing her and that the required paperwork had been filled out and submitted. *Id.* at 54. After indicating that he would allow the representation, the ALJ thoroughly explained the role of a representative, including the fact that such a representative cannot give testimony as if they were a witness. *Id.* at 55-56. After further consideration of the matter, Plaintiff elected to have Ms. Pardini serve as a witness, as opposed to her representative. *Id.* at 56. The ALJ then fully reiterated Plaintiff's right to representation, after which Plaintiff confirmed—for a second time—that she understood this right and wished to continue without representation. *Id.* at 58-59. The hearing continued, during which Plaintiff, Ms. Pardini, and a VE testified. *Id.* at 60-96.

Finally, on December 3, 2021, a third hearing was conducted for purposes of soliciting medical expert testimony. *Id.* at 100-134. Plaintiff stated that she would like Ms. Pardini to represent her. *Id.* at 100. After the ALJ explained the distinction between a representative and a witness, Plaintiff confirmed her decision. *Id.* at 101. Throughout the hearing, however, the ALJ was continually forced to remind Plaintiff and Ms. Pardini about this distinction. *See, e.g.*, *id.* at 107 ("Ms. Jennifer Pardini . . . you can't provide testimony if you're going to be a representative . . . [A] representative's job is to present the case for the claimant, to maybe perhaps cross-examine the medical expert, to ask questions of the vocational expert, to ask the claimant questions that might solicit testimony as well, but not to testify herself."); 108 ("[I]f she doesn't remember or doesn't understand or something like that, just let me know and I'll be happy to, you know, to ask questions to get testimony from her. But in terms of the testimony at this point, it would have to come from the person who is under oath and providing testimony."); 109 ("I'm happy if you want

1    to switch. If [Plaintiff] wants you to switch roles to be a witness, but if you want to solicit that
2    information from [Plaintiff], that would be the more appropriate way to do it."); 110-11 ("I don't
3    think it's accurate that I won't let your wife represent you. It's been very clear in this proceeding
4    that I allowed her to represent. What I won't have is if she is going to represent you to also
5    provide testimony especially without being under oath. Now, as I mentioned before, if you want
6    her to change roles and to provide testimony for you, that's fine."). Despite these frequent
7    reminders from the ALJ, however, Plaintiff continued to allow Ms. Pardini to act as her
8    representative throughout the hearing.

9    Plaintiff's second claim asserts that the ALJ failed to address Plaintiff's posttraumatic
10   stress disorder ("PTSD") under Adult Listing 12.15. Pl.'s Mot. (dkt. 15) at 15; *see also* 20 C.F.R.
11   § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. Plaintiff argues that the ALJ incorrectly
12   evaluated her PTSD under the listing for mood disorders, as opposed to the listing for trauma and
13   stress disorders. Pl.'s Mot. (dkt. 15) at 16. While a somewhat distinct issue, Plaintiff also argues
14   that the ALJ improperly rejected certain medical evidence because it was based on criteria other
15   than the Social Security Regulations. *Id.* at 19-21. In effect, Plaintiff argues that the ALJ
16   misinterpreted the applicable law with respect to the evaluation of the disability determination by
17   the Veterans Affairs ("VA"). *Id.* The VA, as part of its own disability benefits program, had
18   previously assessed Plaintiff as being seventy percent (70%) disabled. *Id.* at 2975.

19   Plaintiff third claim asserts that the ALJ failed to provide legitimate reasons for rejecting
20   the medical opinions of Dr. Byron Wittlin and Dr. Paul Martin. *Id.* at 21. Plaintiff's argument
21   relies significantly on the fact that Dr. Wittlin was a treating source, in contrast to other non-
22   examining sources—such as Dr. Chukwuemeka Efobi, the medical expert who testified at the
23   December 3, 2021 hearing. *Id.* at 21-22. Plaintiff also appears to argue that the ALJ's decision
24   relied exclusively on Dr. Efobi's hearing testimony, without any other evidence. *Id.* at 22. This
25   was erroneous, according to Plaintiff, because not only was Dr. Efobi a non-examining source, but
26   he was also "confused as to the disability rating" and did not have all the records necessary to
27   testify about the disability rating. *Id.* at 22.

28   Finally, Plaintiff's fourth claim asserts that the ALJ did not meet his burden of proof at

1  step five by providing jobs that could reasonably be performed by Plaintiff. *Id.* at 22-23. Plaintiff

2  alleges that, given her "borderline auditory and visual processing speed," she could not perform

3  the jobs provided by the ALJ: checker, mail clerk, or routing clerk. *Id.* at 22; *see also id.* at 39. In

4  support of this allegation, Plaintiff cites to testimony from her wife, Ms. Pardini, that Plaintiff

5  "looks like she understands and she says yes I'll do it and then [I] come back to find that only

6  portions of the tasks were done or that she hadn't followed the instructions and had done

7  something different." *Id*. at 23; *see also id.* at 83.

## THE FIVE-STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*see id.* at § 416.920(a)(3)) and must use a five-step sequential evaluation process to determine whether the claimant is disabled. *Id.* at § 416.920; *see also id.* at § 404.1520. While the claimant bears the burden of proof at steps one through four (*see Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)), "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ appropriately set forth the applicable law regarding the required five-step sequential evaluation process. AR at 22-23.

At step one, the ALJ must determine if the claimant is presently engaged in "substantial gainful activity" (20 C.F.R § 404.1520(a)(4)(i)), which is defined as work done for pay or profit and involving significant mental or physical activities. *See Ford*, 950 F.3d at 1148. Here, the ALJ determined that Plaintiff had not performed substantial gainful activity during the relevant period. AR at 24.

At step two, the ALJ decides whether the claimant's impairment (or combination of impairments) is "severe" (*see* 20 C.F.R. § 404.1520(a)(4)(ii)), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant will not be

1  found to be disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the
2  following severe impairments: left-sided femoroacetabular impingement; obesity; PTSD;
3  borderline personality disorder; bipolar II disorder not otherwise specified; cognitive disorder not
4  otherwise specified; general anxiety disorder; major depressive disorder; mild multilevel lumbar
5  spondylosis; mild degenerative changes in the lumbar spine; mild thoracolumbar scoliosis noted
6  with left iliac crest higher than the right side; nonspecific hypermetabolic right thyroid nodule; and
7  cerebellar tumor post resection. AR at 24. The ALJ found the following conditions to be non-
8  severe: bulimia nervosa; polysubstance addiction disorder that includes alcohol, cannabis, and
9  opioids; sedative-hypnotic use disorder/dependence in remission; migraine without aura, not
10 intractable; dysmenorrhea; menorrhagia; iron deficiency anemia; asthma; right carpal tunnel
11 syndrome; chronic anal fissure; ganglion cyst; insomnia; and, mild left foot plantar fasciitis. *Id.*

12  At step three, the ALJ is tasked with evaluating whether the claimant has an impairment or combination of impairments that meet or equal an impairment in the "Listing of Impairments." *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered sufficiently severe so as to prevent any individual so afflicted from performing any gainful activity. *Id.* at § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria in that listing." *Id.* at § 404.1525(c)(3). For a claimant to show that his or her impairment matches a listing, it must meet all of the specified medical criteria—an impairment that manifests only some of those criteria, no matter how severely, does not "meet" that listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment either meets the listed criteria, or if one or more impairments are determined to be medically equivalent to the severity of that set of criteria, that person is conclusively presumed to be disabled without a consideration of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or equals the criteria or the severity of any of the listings. AR at 25-29.

27  If a claimant does not meet or equal a listing, the ALJ must formulate the claimant's
28  residual functional capacity ("RFC"), which is defined as the most that a person can still do

despite the limitations associated with their impairment. *See* 20 C.F.R. § 404.1545(a)(1). Here, the ALJ determined that Plaintiff retained the ability to perform work at the light exertional level, subject to certain exertional and postural limitations, with an additional limitation requiring work in a low-stress environment, which the ALJ defined as "simple, routine, repetitive tasks; no interactions with the general public; no fast pace production or work requirements, such [as] assembly line work; and no teamwork." AR at 29.

Following the formulation of the RFC, the ALJ must determine—at step four—whether the claimant is able to perform her past relevant work, which is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *See* 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform her past relevant work, the claimant will not be found disabled. *Id.* at § 404.1520(f). Otherwise, at step five, the burden shifts to the agency to prove that the claimant can perform a significant number of jobs that are available in the national economy. *See Ford*, 950 F.3d at 1149. To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly referred to as "the grids") (20 C.F.R. Pt. 404 Subpt. P, App. 2); or, alternatively, the ALJ may rely on the testimony of a vocational expert ("VE"). *Ford*, 950 F.3d at 1149 (citation omitted). A VE may offer expert opinion testimony in response to hypothetical questions about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy, or the demands of other jobs that may be available in the national economy. *See* 20 C.F.R. § 404.1560(b)(1). An ALJ may also use other resources for this purpose, such as the Dictionary of Occupational Titles ("DOT"). *Id.*

At step four, the ALJ determined—based on the VE's testimony—that Plaintiff could not perform her past relevant work as a technical instructor, truck driver, or veterinary technician. AR at 38. At step five, again based on the VE's testimony, the ALJ determined that Plaintiff can perform the requirements of a checker, mail clerk, or routing clerk. *Id.* at 38-39. Thus, the ALJ determined that Plaintiff had not been disabled at any time during the relevant period. *Id.* at 39.

7

**DISCUSSION**

Contrary to Plaintiff's assertions, the ALJ in the present case did not err in determining that Plaintiff was not disabled during the relevant period. As set forth below, Plaintiff's claims are insufficient—individually or collectively—to warrant reversal of the ALJ's decision. All four of Plaintiff's claims will be addressed in turn.

**Right to Representation**

As to Plaintiff's first claim, the hearing conducted before the ALJ was entirely fair from a procedurally standpoint, and there is nothing to suggest that the ALJ prevented Plaintiff from being represented. A Social Security claimant has a statutory right to counsel at their hearing, but they may waive that right and elect to proceed without counsel. *Duns v. Heckler*, 586 F. Supp. 359, 364 (N.D. Cal. 1984) (citing *Ware v. Schweiker*, 651 F.2d 408 (5th Cir.)). "Waiver of the right to counsel, however, must be knowing and intelligent." *Duns*, 586 F. Supp. at 364. By statute, the Commissioner is required to "notify each claimant in writing . . . of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner . . . ." 42 U.S.C. § 406(c); *see also* 20 C.F.R. § 404.1706. This notification must "also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." 42 U.S.C. § 406(c); *see also* 20 C.F.R. § 404.1706. Apart from those required by § 406(c), however, no other disclosures are required. *See Roberts v. Comm'r of the Soc. Sec. Admin.*, 644 F.3d 931, 934 (9th Cir. 2011).

Here, the record clearly establishes that Plaintiff received a hearing acknowledgement letter which set forth the right to representation and included the other required disclosures. AR at 49. While this is all that is required by statute (*see* 42 U.S.C. § 406(c); *Roberts*, 644 F.3d at 934), the ALJ took the *additional* steps of confirming, on the record, that Plaintiff had received and understood the information contained in the hearing acknowledgment letter, and verbally communicated this information to Plaintiff at the hearing. *See* AR at 49; 58-59. These additional steps exceed what is required of the ALJ, and at no point did Plaintiff indicate that she did not understand her right to representation, or the waiver thereof. As such, Plaintiff's waiver of the right to representation at the September 2, 2021 hearing appears knowing and intelligent. *See*

8

*Harmon v. Saul*, 850 Fed. Appx. 485 (9th Cir. 2021) (waiver of the right to representation was knowing and intelligent where the plaintiff received two notices of his right to representation, a list of legal services organizations that could assist in finding representation, plaintiff affirmed at the hearing that he was aware of his right to representation, signed a written waiver of that right, and there was no indication that he lacked capacity to understand the notice or waiver).

*Regardless* of whether Plaintiff's waiver was knowing and intelligent, however, "the key issue is whether, in the absence of counsel, the ALJ met his duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts' and be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" *Mikki v. Berryhill*, No. 17CV1103-GPC(MDD), 2018 WL 4026388, at *3 (S.D. Cal. Aug. 23, 2018) (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)). The ALJ in the present case appears to have thoroughly discharged this duty. During the September 2, 2021 hearing,[4] the ALJ undertook a detailed inquiry into Plaintiff's work history, at several times seeking further clarification from Plaintiff to better allow the VE to form an opinion. AR at 60-75. The ALJ also sought testimony from Plaintiff regarding her history of drug abuse, current medications, as well as her current levels of mental, emotional, and physical functioning. *Id.* at 75-82. Following the examination of Plaintiff, the ALJ also examined Plaintiff's wife, Ms. Pardini. *Id.* at 82-88. The ALJ questioned Ms. Pardini about the factors that would prevent Plaintiff from being able to work on a full-time basis, including asking for specific examples as to why this was the case. *Id.* at 83. The ALJ asked Ms. Pardini about Plaintiff's level of social functioning, as well as her current medications and their effects. *Id.* at 84-87. The ALJ also gave Ms. Pardini time to testify about anything else that she felt was important to have in the record. *Id.* at 87-88. Finally, the ALJ's examination of the VE appears sufficiently thorough, as he posed several hypotheticals to the VE, all of which included different limitations and exertional levels. *Id.* at 88-96. The ALJ also took time to explain to Plaintiff and Ms. Pardini the process by which testimony is elicited from the

---

[4] Because Plaintiff was represented at the December 3, 3021 hearing, this higher duty of inquiry did not apply to the ALJ. Nonetheless, the ALJ's detailed questioning of the medical expert at that hearing would likely have discharged that duty in any case. AR 101-135.

9

VE, as well as how it might be relied on by the ALJ. *Id.* at 93-94. As such, the ALJ appears to have sufficiently inquired into and explored the relevant facts. *Compare with Cox*, 587 F.2d at 991 (9th Cir. 1978) (ALJ's erroneous conclusion, based on an ambiguous letter from a physician, that the plaintiff's disability had ceased would have been corrected had the ALJ engaged in further inquiry, such as giving plaintiff the opportunity to elaborate); *Struck v. Astrue,* 247 Fed. Appx. 84, 86 (9th Cir. 2007) (ALJ failed to fully and fairly develop the record for an unrepresented plaintiff when the ALJ failed to request certain hospital records, which the ALJ and medical expert recognized were important to plaintiff's claim).

As to Plaintiff's claim that the ALJ somehow prevented Plaintiff from being represented, this claim is equally unfounded. At both the September 2, 2021 and December 3, 2021 hearings, the ALJ thoroughly explained the differences between representatives and witnesses. *See id.* at 55-56, 101. On September 2, 2021, after considering the ALJ's explanation in this regard, Plaintiff ultimately elected to have Ms. Pardini serve as a witness, as opposed to a representative. *Id.* at 56. This decision suggests that Plaintiff understood the difference between these roles and made an informed decision as to the role that Ms. Pardini would be most effective in during that hearing. At the December 3, 2021 hearing, on the other hand, Plaintiff elected to have Ms. Pardini serve as her representative. *Id.* at 101. While the ALJ needed to continually remind Ms. Pardini about the distinction between a representative and a witness, this does not mean that the ALJ was preventing Ms. Pardini from acting as a representative—he simply would not allow the two roles to become amorphous. The ALJ was clear that the decision as to whether Ms. Pardini would be acting as a representative or as a witness was, at all times, entirely within Plaintiff's control. If Plaintiff wished to have Ms. Pardini switch roles during the December 3, 2021 hearing she could have elected so do so—as she had done at the hearing on September 2, 2021.

For the reasons stated *supra*, Plaintiff's claim that the hearing conducted before the ALJ was unfair is unsupported. Instead, the ALJ in the present case appears to have gone *beyond* what was required in order to better ensure that the hearing was conducted fairly and accurately. As such, Plaintiff's first claim is **DENIED**.

**Failure to Address Adult Listing 12.15; Improper Rejection of VA Determination**

Plaintiff's second claim, which asserts that the ALJ failed to address Plaintiff's PTSD under Adult Listing 12.15, is also unsupported on the current record. While Plaintiff argues that the ALJ incorrectly evaluated her PTSD under the listing for mood disorders, as opposed to the listing for trauma and stress disorders, this is simply not the case. The ALJ expressly found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, d[o] not meet or medically equal the criteria of listings 12.04, 12.05, 12.06, 12.08, **and 12.15**." AR at 26 (emphasis added). In making this finding, the ALJ considered whether either the "paragraph B" or "paragraph C" criterion were satisfied for Listing 12.15, and sufficiently analyzed why neither criterion were met. *See id.* at 26-28 (explaining, and assessing, the requirements of both the paragraph B and paragraph C criterion).[5] While Plaintiff appears to disagree with the ALJ's findings as to the lack of extreme or marked limitations (*see* Pl.'s Mot. (dkt. 15) at 17-19)), as well as his assessment of the relevant medical opinions, it is inaccurate to say that the ALJ did not *address* the criterion of Listing 12.15. As to Plaintiff's disagreement with the ALJ's assessment of the medical opinions, that issue will be address *infra*.

While a somewhat distinct issue, Plaintiff also argues that the ALJ improperly rejected the VA's disability determination because it was based on criteria other than the Social Security Regulations. *Id.* at 19-21. Plaintiff relies on 20 C.F.R. section 404.1504, which provides—in part—that "[w]e will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim . . . ." While an ALJ must *consider* the evidence from these other agencies, however, section 404.1504 also clarifies that it is no longer necessary for the ALJ to provide any *analysis* about a disability decision from these agencies.[6] The requirement, articulated in *McCartey v. Massanari*, 298 F.3d

---

[5] Even were the ALJ's analysis less detailed, however, "[i]t is unnecessary to require the [ALJ], as a matter of law, to state why a claimant failed to satisfy every different section of the listing." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990). An ALJ provides sufficient analysis to support a step three finding by "includ[ing] a statement of subordinate factual foundations on which the ultimate factual conclusions [were] based." *Id.*

[6] This revision applies to claims, such as the present one, filed on or after March 27, 2017. 20 C.F.R. § 404.1504.

11

1072, 1076 (9th Cir. 2002), that great weight be afforded to a VA's disability determination has been superseded by these revised regulations. *See Curt R. v. Comm'r of Soc. Sec.*, No. C22-5609-BAT, 2023 WL 3866852, at *2 (W.D. Wash. June 7, 2023); *see also David Y. v. Comm'r Soc. Sec. Admin.*, No. 6:21-CV-00917-MO, 2022 WL 14746409, at *4 (D. Or. Oct. 24, 2022). As such, the ALJ was not required to explicitly address the VA's determination in his decision. The ALJ did, however, clearly satisfy his duty to consider the evidence underlying the VA's determination, as the ALJ's decision shows thorough consideration of the medical records from VA sources. *See* AR at 32-27. This is all that was required of the ALJ.

For the foregoing reasons, Plaintiff's second claim is **DENIED** as to both the alleged failure to address Adult Listing 12.15, as well as the alleged improper rejection of the VA's disability determination.

**Assessment of Medical Opinions**

Contrary to Plaintiff's argument, the ALJ provided sufficient reasons for rejecting the medical opinions of Dr. Byron Wittlin and Dr. Paul Martin. *Id.* at 21. As noted, Plaintiff's argument relies heavily on the purported distinction between treating sources and other non-examining sources. *Id.* at 21-22. Plaintiff argues that more weight should have been given to the opinion of Dr. Wittlin as a treating source, as well as Dr. Martin, a consultative examiner whose opinion was consistent with that of Dr. Martin. *See* Pl.'s Mot. (dkt. 15) at 21-22. Plaintiff's argument, however, misconstrues the evaluation of medical opinions under the revised regulations.

Under recently promulgated regulations that apply to Plaintiff's application,[7] ALJs are required to evaluate the "persuasiveness" of all medical opinions according to several factors. *See* 20 C.F.R. § 404.1520c(a). The first two factors—supportability and consistency—are considered the most important, and the ALJ is required to explicitly address them in his or her decision. *See id.* at § 404.1520c(b)(2); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The agency must . . . explain how [it] considered the supportability and consistency factors in reaching

---

[7] The new regulations concerning the assessment of medical opinions apply to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c.

12

these findings."). The ALJ "may, but [is] not required to," explain how he or she considered the remaining factors listed in the regulations. 20 C.F.R. § 404.1520c(b)(2).

These new regulations have supplanted the evaluation scheme that existed under 20 C.F.R. § 404.1527, which included a hierarchy among medical sources, deference to certain medical opinions, and the assignment of weight to all medical opinions. Ninth Circuit caselaw, since overturned, interpreted these former regulations to require "that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion . . . ." *Woods*, 32 F.4th at 792. Even under the new regulations, however, an ALJ still "cannot reject an . . . opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* (emphasis added); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

In the present case, Plaintiff's argument relies on the now-outdated regulations, as well as caselaw that interprets those regulations. *See* Pl.'s Mot. (dkt. 15) at 21 (citing several cases applying the old regulations to claims filed *before* March 27, 2017). Under the new regulations, Dr. Wittlin's opinion was entitled to no greater weight simply because he was a treating source. Instead, all that was required of the ALJ was to assess the opinion of Dr. Wittlin—and Dr. Martin—in accordance with the procedures set forth in the new regulations. The assessments provided by the ALJ clearly discharged this duty. As to Dr. Martin, the ALJ explicitly addressed the factors of supportability and consistency, providing detailed examples with respect to each factor. *See Woods*, 32 F.4th at 792 ("The agency must . . . explain how [it] considered the supportability and consistency factors in reaching these findings."). Contrary to Plaintiff's assertion, moreover, the ALJ did not "disregard" Dr. Martin's opinion, but rather found that it was "somewhat persuasive." AR at 36. As to Dr. Wittlin, such a detailed analysis was not necessary, as the only opinion provided by Dr. Wittlin was a single letter to the effect that Plaintiff is unable to participate in competitive employment, which is issue that is reserved for the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3). The ALJ's evaluation of these opinions, therefore, meets the substantial evidence standard.

Plaintiff also appears to suggest that the ALJ's non-disability finding is based *solely* on the

testimony of Dr. Chukwuemeka Efobi, the medical expert who testified at the December 3, 2021 hearing. AR at 22. This argument is also unpersuasive, as the ALJ's decision provided a thorough analysis of the array of evidence which supported the non-disability finding. *Id.* at 32-37. In any case, the ALJ found Dr. Efobi's opinion "partially persuasive," which indicates a somewhat more limited reliance on this opinion in the ultimate non-disability determination. *Id.* at 37.

For the reasons provided, Plaintiff's third claim, which alleges an improper assessment of the relevant medical opinions, is also **DENIED**.

**Performance of Occupations Provided**

Plaintiff's fourth claim is also unsupported, as the ALJ did meet his burden of proof at step five by providing jobs that could reasonably be performed by Plaintiff. *Id.* at 22-23. Plaintiff argues that, given her "borderline auditory and visual processing speed," she could not perform the jobs provided by the ALJ: checker, mail clerk, or routing clerk. *Id.* at 22; *see also id.* at 39. In support of this allegation, Plaintiff cites only to testimony from her wife, Ms. Pardini, that Plaintiff "looks like she understands and she says yes I'll do it and then [I] come back to find that only portions of the tasks were done or that she hadn't followed the instructions and had done something different." *Id*. at 23; *see also id.* at 83. Plaintiff suggest that this "reasonably [ ] disqualifies her [from] a job as a mail clerk, checker[,] or router." *Id.* at 23.

The scant evidence provided in support of Plaintiff's argument is simply insufficient to warrant the conclusion that she could not perform these occupations. More importantly, however, Plaintiff's argument completely overlooks the process by which the ALJ formulates a RFC. In assessing Plaintiff's RFC, the ALJ accounted for Plaintiff's limitations in mental functioning, specifically by requiring work in a low-stress environment, which the ALJ defined as "simple, routine, repetitive tasks; no interactions with the general public; no fast pace production or work requirements, such [as] assembly line work; and no teamwork." AR at 29. The questions posed to the VE, as well as the occupations provided by the VE, all accounted for the limitations included in Plaintiff's RFC. This is especially clear considering that all of the occupations provided were unskilled occupations. As such, the ALJ met his burden of proof at step five, and Plaintiff's fourth claim is **DENIED**.

**CONCLUSION**

Accordingly, for the reasons stated herein, Defendant's Cross-Motion for Summary Judgment (dkt. 19) is **GRANTED**, and Plaintiff's Motion for Summary Judgment (dkt. 15) is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 29, 2023

ROBERT M. ILLMAN
United States Magistrate Judge

15